USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/27/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHANSEL MARTE,

                      Petitioner,

-against-

SUPERINTENDENT THOMS,

                      Respondent.

1:19-cv-11886 (MKV)

**MEMORANDUM OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

MARY KAY VYSKOCIL, United States District Judge:

      Petitioner Johansel Marte filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his state court conviction for two counts of first-degree assault and one count of second-degree attempted assault. Marte contends he is entitled to habeas relief for four reasons: (1) he was deprived of a speedy trial under New York state law; (2) the trial court erred by declining to charge the jury on the defense of justification; (3) the trial court erred in declining to sever Marte's trial from his co-defendants; and (4) the trial court improperly dismissed a juror midway through the trial. For the following reasons, the petition is DENIED.

## BACKGROUND

### I.    Factual Background

      In the early morning of May 10, 2010, Marte visited a club in Manhattan, the Mambi, with his brother, Johansel Marte-Tejada, and a friend, Emerlin Meran. *See* Transcript 28:6–13 [ECF No. 19] ("Tr."). Another group of individuals, including Jorge Rocha, Amanuel Avila, and Alvaro Calzado also visited the Mambi that morning. *See* Tr. 378:19–21, 380:12–15, 555:7–8, 596: 6–13. While at the Mambi, Rocha and Calzado argued with another man, Francisco Ozuna, about the music playing on the jukebox. *See* Tr. 360:19–361:4, 427:10–16. Rocha and his friends then

left the Mambi, *see* Tr. 572:6–18, and Marte, Marte-Tejada, Meran, and Ozuna left shortly thereafter, *see* Tr. 250:18–20, 427:19–24.

After leaving, the two groups argued in the street outside of the Mambi. *See* Tr. 232:22–23, 250:18–251:8. Rocha and his friends hailed a cab to leave. *See* Tr. 282:22–24, 604:5–6. Rocha entered the cab while Calzado and Avila stood by the rear passenger door. *See* Tr. 601:20–602:2, 642:16–643:7. Marte and Marte-Tejada then approached the cab. *See* Tr. 1173:10–11, 1175:15, 1296:21–22, 1297:3–5. As Marte-Tejada neared the rear of the cab, he struck Calzado twice in the head with a beer bottle. *See* Tr. 1305:17–23, 1306:21, 111:22–24, 1182:6–7. Simultaneously, Marte approached Avila from behind and stabbed him in the side and in the back.[1] *See* Tr. 1253:1–7, 1307:12–14, 1309:18–21. After hearing a commotion, Rocha exited the cab and saw Marte holding a knife. *See* Tr. 485:10–11. Rocha ran and Marte chased him. *See* Tr. 367:19–20, 485:14–15. While trying to escape, Rocha tripped, fell, and held his hands out to protect himself. *See* Tr. 1285:20–21, 1309:23–25. Marte then stabbed Rocha through the arm.[2] *See* Tr. 48:18–49:5, 1256:14–17.

## II. Procedural Background

1. *Trial*

In May 2010, Marte was charged with two counts of first-degree assault and one count of second-degree attempted assault.[3] He was tried jointly with Marte-Tejada, Meran, and Ozuna in New York Supreme Court. At trial, the Government introduced into evidence surveillance camera

---

[1] Avila's injuries, which included a seven-inch long gash across his liver, were "life threatening." *See* Tr. 133:8, 138:4–22.

[2] At the time of trial, Rocha still experienced limited sensation and strength in his arm and fingers. *See* Tr. 495:20–496:15.

[3] Marte was charged with several other counts, including attempted murder. *See* Tr. 63:9–12. However, those other counts were not submitted to the jury.

video footage that captured many of the events at issue. *See* Government Exhibit 4 [ECF No. 17] ("GX 4").

Marte did not testify at trial. However, his brother, Marte-Tejada, did. *See* Tr. 990–1098. Marte-Tejada testified that he was "very scared" of Rocha and Calzado because they were members of a violent gang called the Trinitarios. Tr. 997:3–13, 1012:8–10. Marte-Tejada claimed that, inside the Mambi, he saw Calzado holding a knife and that Rocha and Calzado threatened to "stab" and "shoot" Marte and Marte-Tejada. Tr. 995:14–216, 997:1–7. Once outside the Mambi, Marte-Tejada testified that Rocha and Calzado "call[ed]" Marte and Marte-Tejada over to the cab where they were standing. Tr. 1000:7–14. Despite being "very scared" of Rocha and Calzado, Marte-Tejada claimed that he and Marte complied and walked over to the cab. Tr. 1048:20–21. As Marte-Tejada walked towards the cab, he claimed that he "saw [Rocha] . . . pointing at [him] with a gun" through "the back of the car's windshield." Tr. 997:15–17, 1001:18–23. After allegedly seeing Rocha holding a gun in the back of the cab, Marte-Tejada claimed that he yelled out to warn Marte that Rocha and Calzado were armed.[4] Tr. 1068:11–17.

In closing, Marte did not deny that he had assaulted Avila and Rocha. *See* Tr. 1245:13–1247:6. Instead, relying on Marte-Tejada's trial testimony, Marte argued that his actions were justified. *See* Tr. 1247:3–4. In particular, Marte suggested that the attacks were justified because he believed that Rocha and/or Avila were going to attack him or his brother. *See* Tr. 1245:19–20, 1247:1–6.

Based on Marte-Tejada's testimony, Marte requested that the trial court charge the jury on the defense of justification. *See* Tr. 1114:11–17. The trial court refused, explaining that "it was

---

[4] This testimony sharply contrasted with Marte-Tejada's testimony before the grand jury. Of note, he did not mention the Trinitarios in his grand jury testimony, *see* Tr. 1029:8–14, and he testified that Rocha attacked Marte from behind, *see* Tr. 1083:13–1084:5.

3

not a reasonable consideration of the evidence that this was a justified attack" because the evidence showed Marte and Marte-Tejada "moving towards the place where [the assaults] occurred." Tr. 1115:5–11.

Marte also moved for a mistrial, seeking to sever his trial from his co-defendants. *See, e.g.*, Tr. 71:7–9, 533:20–22, 1194:9–1195:8. Marte argued that Meran's defense attorney acted as a "second prosecutor" at trial by making remarks inconsistent with Marte's defense. *See* Tr. 1195:4–5. Of note, Meran's counsel suggested that Meran was uninvolved in the assaults, and that Marte acted unilaterally. *See* Tr. 1173:23–24 ("Is there any evidence that my client conspired or planned with Mr. Marte?"), 61:10–11 ("I will leave it to you decide . . . [w]hether it was partly a team plan, or whether it was a deeply personal, impulsive act by Mr. Marte."). In addition, on cross-examination, Meran's counsel asked Rocha about a statement purportedly made by Marte before the stabbing.[5] *See* Tr. 621:6–7. The trial court declined to sever the trials.

2. *Conviction and Sentence*

The jury convicted Marte of two counts of first-degree assault and one count of second-degree attempted assault.[6] *See* Tr. 1413:21–25, 1414:16–20, 1415:16–20. In 2013, the trial court sentenced Marte to an aggregate 14-year term of incarceration. *See* Sentencing Transcript 18:13–24 [ECF No. 12-6].[7]

---

[5] According to Rocha, Marte stated "'You are the one I want' or something like that" before stabbing him. Tr. 621:6–7.

[6] The jury convicted Marte-Tejada of one count of second-degree assault and one count of attempted second-degree assault. *See* 1415:1–5, 1415:21–25. Meran was convicted of one count of evidence tampering, *see* Tr. 1416:11–15, and Ozuna was acquitted on all counts, *see* Tr. 1414:11–15.

[7] Given that Marte was arrested in 2010, the Court is unsure whether he is still incarcerated. Even if he has been released, the trial court also sentenced Marte to five-years of post-release supervision. *See* Sentencing Tr. 18:17–21. Even if Marte is only serving post-release supervision at this time, his habeas petition is not moot. *See Jones v. Cunningham*, 371 U.S. 236, 243 (1963) ("While petitioner's parole releases him from immediate physical imprisonment, it imposes conditions which significantly confine and restrain his freedom; this is enough to keep him in the 'custody' of the members of the [state parole board] within the meaning of the habeas corpus statute.").

3.  *Direct Appeal*

Marte appealed his conviction to the First Department of the New York Appellate Division. *See People v. Marte*, 167 A.D.3d 409, 89 N.Y.S.3d 68 (1st Dep't 2018).  On appeal, Marte's counsel argued: (1) Marte was deprived of a speedy trial under New York state law, (2) the trial court erred in declining to instruct the jury on the defense of justification, (3) the trial court erroneously refused to sever the trial, and (4) the trial court improperly discharged a juror (who had previously informed the Court and the parties of a pre-scheduled surgery) midway through the trial and replaced him with an alternate juror. *See* State Court Record 242–301 [ECF Nos. 13-1–13-5] ("S.R.").  Marte reiterated the justification and severance claims in a separate *pro se* brief, citing both New York and federal law. *See* S.R. 302–330.

The First Department unanimously affirmed. *See Marte*, 167 A.D.3d at 410, 89 N.Y.S.3d at 69.  With respect to severance, the First Department concluded that the trial court "providently exercised its discretion in denying [Marte's] repeated motions for a mistrial" because Meran's defense "was not incompatible with [Marte's] defense, and [Meran's] counsel neither elicited inadmissible evidence against [Marte] nor caused any other prejudice." *Id.*  The First Department also rejected the justification claim, finding it "generally similar to arguments [the] Court ha[d] already rejected on [Meran and Marte-Tejada's] appeals."[8] *Id.*  In addition, the First Department rejected the speedy trial and juror dismissal claims as unpreserved and, in the alternative, as meritless. *Id.*

The Court of Appeals denied leave to appeal. *See People v. Marte*, 33 N.Y.3d 951, 123

---

[8] The convictions of Meran and Marte-Tejada also were unanimously affirmed by the First Department. *See People v. Tejada*, 153 A.D.3d 1210, 60 N.Y.S.3d 681 (1st Dep't 2017); *People v. Meran*, 143 A.D.3d 423, 424, 38 N.Y.S.3d 189, 189 (1st Dep't 2016).  In resolving Marte-Tejada's appeal, the First Department rejected a justification argument similar to Marte's, explaining that "the court correctly declined to charge justification" because "[t]here was no reasonable view of the evidence, considered in the light most favorable to defendant . . . that at the time [of the assaults], the victim reasonably appeared to pose any threat to defendant, either personally or by aiding other persons." *Tejada*, 153 A.D.3d at 1210, 60 N.Y.S.3d at 682.

N.E.3d 843, 100 N.Y.S.3d 184 (N.Y. 2019).

    4.    *Habeas Petition*

Marte, proceeding *pro se*, filed his petition for a writ of habeas corpus, raising substantially the same arguments rejected on his direct appeal. *See* Petition [ECF No. 1] ("Pet."). Specifically, Marte contends that he is entitled to habeas relief for four reasons: (1) he was deprived of a speedy trial under New York law; (2) the trial court erred in declining to charge the jury on the defense of justification; (3) his trial should have been severed from the trial of his co-defendants; and (4) the trial court erred in dismissing one juror midway through the trial. *See* Pet. Respondent filed an opposition, *see* Memorandum of Law in Opposition [ECF No. 13] ("Opp."), along with the criminal trial transcript, *see* Tr., and state court record, *see* S.R. Petitioner did not file a reply.

## LEGAL STANDARD

### I. Antiterrorism and Effective Death Penalty Act

"Habeas review is an extraordinary remedy." *Bousley v. United States*, 523 U.S. 614, 621 (1998). Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petitioner held in custody "pursuant to the judgment of a State court" is entitled to habeas relief only where his detention violates the United States Constitution or the laws or treaties of the United States. *See* 28 U.S.C. § 2254(a). The Court may only grant habeas relief where the decision of the state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

Under Section 2254(d)(1), a state court decision is "contrary to" clearly established federal law where it is "diametrically different, opposite in character or nature, or mutually opposed" to

Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (cleaned up). A state court decision involves "an unreasonable application" of federal law where a state court "correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case." *Bell v. Cone*, 535 U.S. 685, 694 (2002). Importantly, "[t]he question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citation omitted).

When determining whether a state court decision was based "on an unreasonable determination of the facts" under Section 2254(d)(2), the Court must "accord the state trial court substantial deference." *Brumfield v. Cain*, 576 U.S. 305, 314 (2015). Factual findings are "presumed to be correct" and this presumption can only be overcome with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### II.     Exhaustion

Before seeking a federal writ of habeas corpus, a petitioner must exhaust all available state remedies, *see* 28 U.S.C. § 2254(b)(1)(A), thereby providing the state courts with an "opportunity to pass upon and correct alleged violations of its prisoners' federal rights," *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (cleaned up). A petitioner satisfies the exhaustion requirement by fairly presenting each of his claims to the highest state court available. *See id.* To fairly present a claim, a petitioner must identify the facts that entitle him to relief, *see Picard v. Connor*, 404 U.S. 270, 276–77 (1971), and the federal constitutional basis for the claim, *see Duncan v. Henry*, 513 U.S. 364, 365–66 (1995).

## DISCUSSION

Marte raises four grounds for habeas relief. All four grounds fail.

I.      The Speedy Trial Claim

Marte first contends that he was deprived of a speedy trial under New York state law. *See* Pet. 13, 18–39. Specifically, Marte argues that under New York Criminal Procedure Law ("C.P.L.") § 30.30(1)(a), his criminal charges should have been dismissed because the State was not "ready for trial within . . . six months of the commencement of [the] criminal action." *See also* N.Y. C.P.L. § 170.30(1)(e) (an information or a complaint may be dismissed where the "defendant has been denied the right to a speedy trial").

This claim fails because "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); 28 U.S.C. § 2254(a) (A "district court shall entertain an application for a writ of habeas corpus . . . only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."). Marte claims *only* a violation of his *state law* speedy trial rights under N.Y. C.P.L. § 30.30(1)(a). Because Marte alleges a violation of state—as opposed to federal or constitutional—law, he is not entitled to federal habeas relief. *See, e.g.*, *Cruz v. Uhler*, No. 16-cv-8852, 2018 WL 1441390, at *2 (S.D.N.Y. Mar. 22, 2018) ("Even if his state speedy-trial rights were violated, that is not a ground for federal habeas relief."); *Swinton v. Racette*, No. 12-cv-9051, 2017 WL 2664196, at *3 (S.D.N.Y. June 20, 2017) ("[A]ny state speedy trial law violation is not cognizable on federal habeas review."); *Cadilla v. Johnson*, 119 F. Supp. 2d 366, 374 (S.D.N.Y. 2000) ("Because C.P.L. § 30.30 is merely a state law provision requiring the prosecution to be ready for trial, a § 30.30 claim does not raise a federal constitutional claim.").[9] Accordingly, Marte is not entitled to habeas relief on this claim.

---

[9] Marte does not contend that any alleged speedy trial violations impinged upon his federal or constitutional rights. But even if he did, such a claim would be unreviewable. Marte did not frame the speedy trial issue as a federal claim

8

## II.   The Justification Defense

Marte next contends that the trial court erroneously declined to instruct the jury on the defense of justification. *See* Pet. 13, 39–43. In particular, Marte contends that the jury could have reasonably concluded that Marte was threatened by Rocha, Calzado, and Avila because they were members of the Trinitario gang and Marte-Tejada testified that he tried to warn Marte that he believed Rocha and Calzado were armed. *See* Pet. 39.

The Court applies a three-step analysis in evaluating this claim. First, "was [Marte] entitled to a justification charge?" *DeLeon v. Lempke*, 401 F. App'x 610, 611–12 (2d Cir. 2010) (quoting *Jackson v. Edwards*, 404 F.3d 612, 621 (2d Cir. 2005)). Second, "if so, did the failure to give one result in a denial of due process?" *Id.* And third, "if so, did the state court's contrary conclusion constitute an unreasonable application of clear Supreme Court law?" *Id.* The Court's role is "not to interpret New York's law of justification, but to determine whether evidence was sufficient to warrant a justification charge under that law." *Davis v. Strack*, 270 F.3d 111, 124 n.4 (2d Cir. 2001).

To be entitled to a justification instruction in New York, "a defendant must show both that he subjectively believed that deadly force was necessary under the circumstances and that a reasonable person in his situation would have held this belief." *Blazic v. Henderson*, 900 F.2d 534, 540 (2d Cir.1990) (citing *People v. Goetz*, 68 N.Y.2d 96, 115, 506 N.Y.S.2d 18, 29–30, 497 N.E.2d 41, 52 (1986)). A defendant cannot claim the justification defense if he "knows he can retreat with complete safety but fails to do so" *or* if he "is the initial aggressor." *DeLeon*, 401 F.

---

on his direct appeal. *See* S.R. 249, 265–86, 431–39, 458–60. Thus, that claim was not "fairly presented" to the New York appellate courts, *Baldwin*, 541 U.S. at 29, and is procedurally barred from review. *See Carvajal v. Artus*, 633 F.3d 95, 104–05 (2d Cir. 2011) ("When a habeas applicant fails to exhaust his federal constitutional claim in state court . . . this Court will generally be barred from granting habeas relief."). Further, Marte does not demonstrate "cause" for the default and resulting "prejudice," *Murray v. Carrier*, 477 U.S. 478, 485 (1986), or that he is "actually innocent," *id.* at 496. The Court therefore cannot excuse Marte's failure to raise this issue with the state courts, and will not consider it further.

9

App'x at 612 (citing N.Y. Penal Law § 35.15(2)(a); *People v. Holden*, 260 A.D.2d 233, 234, 689 N.Y.S.2d 40, 40–41 (1st Dep't 1999)).

A justification charge is warranted "if on any reasonable view of the evidence, the fact finder might have decided that defendant's actions were justified." *People v. Padgett*, 60 N.Y.2d 142, 145, 468 N.Y.S.2d 854, 856, 456 N.E.2d 795, 797 (N.Y. 1983); *see also Davis*, 270 F.3d at 124. The Court must review "the record in a light most favorable to the [petitioner]." *People v. McManus*, 67 N.Y.2d 541, 549, 496 N.E.2d 202, 207, 505 N.Y.S.2d 43, 48 (N.Y. 1986). However, the Court need not "adopt an artificial or irrational view of the evidence in deciding whether a justification charge is warranted." *Blazic*, 900 F.2d at 540.

Having carefully reviewed the record in the light most favorable to Marte, the Court finds that no reasonable view of the evidence supported a justification charge. The security footage presented at trial plainly shows that Marte and Marte-Tejada were the initial aggressors. *See* GX 4. Although Marte and Marte-Tejada were purportedly "very scared," they freely approached Rocha, Calzado, and Avila. Marte first stabbed Avila—repeatedly—from behind. Tr. 997:3–13, 1012:8–10. Then, after Rocha exited the cab and attempted to flee by running down the street, Marte chased him and, after Rocha fell to the ground, Marte stabbed him in the arm.

Marte does not persuade otherwise. Marte argues that his actions were justified because his brother told him that Rocha was holding a pistol in the back of the cab. Pet. 41; *see People v. Magliato*, 68 N.Y.2d 24, 30, 496 N.E.2d 856, 860, 505 N.Y.S.2d 836, 840 (N.Y. 1986) (displaying a weapon may constitute the use of deadly force). But Marte-Tejada's testimony cannot salvage Marte's claim. First, there is no evidence that Marte's first victim, Avila, was armed at any time or posed any threat whatsoever. Indeed, at the time of the attack, Avila was standing unarmed, with his back to Marte. Marte therefore falls woefully short of demonstrating that the use of deadly

force—or any force—was necessary. *See People v. Singh*, 139 A.D.3d 761, 762, 31 N.Y.S.3d 168, 170 (2d Dep't 2016) ("A person is justified in using deadly force against another if he . . . reasonably believes such to be necessary to defend himself . . . from what he . . . reasonably believes to be the use or imminent use of deadly physical force *by such other person*." (emphasis added)). Second, with respect to Rocha, the video footage demonstrates that Marte attacked Rocha only *after* Rocha exited the cab and attempted to flee by running down the street.[10] Rocha's attempted escape provided Marte an opportunity to retreat from the altercation. *See DeLeon*, 401 F. App'x at 612. Instead of retreating, Marte pursued Rocha and stabbed him through the arm after Rocha tripped and fell on the ground. *See People v. Bolling*, 7 N.Y.3d 874, 875, 859 N.E.2d 913, 826 N.Y.S.2d 174 (N.Y. 2006) (no justification charge warranted where defendant attacked victim who was "disarmed" and "lying on the ground").[11]

For these reasons, the Court agrees with the First Department that a justification charge was not warranted. Marte is not entitled to habeas relief on this claim.

### III. The Severance Claim

Marte next claims that his trial should have been severed from his co-defendants. *See* Pet. 13–14, 44–46. Specifically, Marte argues that Meran's defense attorney acted as a "second prosecutor" because some of his remarks at trial were inconsistent with Marte's defense. Pet. 14. In particular, Meran's counsel suggested that Marte acted impulsively and unilaterally. While

---

[10] Rocha's (failed) attempt to escape severely undercuts Marte-Tejada's testimony that Rocha was holding a gun at the time Marte and Marte-Tejada approached the cab.

[11] Following the trial, Marte contends that a juror approached his lawyer, stated that she believed Marte had acted in self-defense, and asked why the trial court had not instructed the jury on self-defense. *See* Pet. 43. Even if true, this unidentified juror's statements, made without the benefit of any explanation from the trial court judge, do not bear on the legal question of whether Marte was entitled to a justification charge based on a reasonable view of the evidence.

cross-examining Rocha, Meran's counsel also introduced into evidence a statement allegedly made by Marte for purposes of impeachment.[12]

Again, Marte frames his arguments entirely in the context of New York *state* law, presenting no cognizable claim for purposes of habeas review.  *See Lewis*, 497 U.S. at 780; *Estelle*, 502 U.S. at 67–68; 28 U.S.C. § 2254(a).  But even assuming that Marte had argued that the joint trial rose to the level of a federal or constitutional violation, his contention would still fail.

Joint trials have "long been recognized as a constitutionally acceptable accommodation of the defendant's right to a fair trial," *Herring v. Meachum*, 11 F.3d 374, 377 (2d Cir. 1993), as consolidated prosecutions "conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial," *Bruton v. United States*, 391 U.S. 123, 134 (1968).  Accordingly, a denial of severance implicates due process concerns only where a petitioner "go[es] beyond the potential for prejudice and prove[s] that *actual* prejudice resulted from the events as they unfolded during the joint trial."  *Herring*, 11 F.3d at 377–78 (emphasis in original); *see also Council v. Capra*, No. 14-cv-1849, 2015 WL 13746663, at *20 (S.D.N.Y. Sept. 24, 2015), *report and recommendation adopted*, No. 14-cv-1849, 2016 WL 165022 (S.D.N.Y. Jan. 14, 2016) ("A denial of severance will trigger due-process concerns only if it appears that the joint trial actually denied the defendant a fundamentally fair proceeding."). At minimum, Marte must therefore show that "the jury, in order to believe the core of testimony offered on behalf of [Meran], must necessarily [have] disbelieve[d] the testimony offered on behalf of [Marte]."  *Grant v. Hoke*, 921 F.2d 28, 31 (2d Cir. 1990).

Marte makes no such showing here.  As an initial matter, the Court is unpersuaded by the suggestion that Meran's defense was incompatible with or antagonistic to Marte's defense.  *See*

---

[12] *See supra* note 5.

Pet. 45. At trial, Marte did *not* dispute that he committed the charged assaults. *See* Tr. 1245–47. Instead, as discussed above, Marte argued that his actions were justified. *See* Pet. 39–43; *see also* Tr. 1247:3–4 ("His intent was simply to defend himself and his brother from harm"). That defense was *not* incompatible with the defense raised by Meran—*i.e.*, that Meran was uninvolved and that Marte acted alone. *See* Tr. 1173:23–24 ("Is there any evidence that my client conspired or planned with Mr. Marte?"), 61:10–11 ("I will leave it to you decide . . . [w]hether it was partly a team plan, or whether it was a deeply personal, impulsive act by Mr. Marte."). Indeed, it was entirely possible for the jury to conclude *both* that Meran was uninvolved, *and* that Marte was not guilty. Marte has therefore not shown that the jury "must *necessarily* [have] disbelieve[d] the testimony offered on behalf of [Marte]" in order "to believe the core of testimony offered on behalf of [Meran]." *Grant*, 921 F.2d at 31 (emphasis added). Habeas relief is not warranted.

Marte has also failed to prove that "*actual* prejudice resulted from . . . the joint trial." *Herring*, 11 F.3d at 377–78 (emphasis in original). Although Marte makes much of the fact that Meran's attorney introduced into evidence a damaging statement allegedly made by Marte, *see* Pet. 45, that statement *still* would have been admissible against Marte in a separate trial. *See* Fed. R. Evid. 801(d)(2)(A), 803(3); N.Y. R. Evid. 8.03, 8.41(1); Tr. 531:11–14 ("In the event that this was a single trial against [Marte], the fact that a witness may have stated that [Marte] made this statement of intent . . . would be clearly admissible."); *see also Council*, 2015 WL 13746663, at *21 (no prejudice where "[t]he same evidence . . . would have been admissible against [habeas petitioner] in a separate trial"). Even assuming there was some marginal prejudice against Marte, the trial court undertook adequate efforts to avoid juror confusion by instructing the jury to evaluate the evidence only as it "applie[d] or fail[ed] to apply to each defendant separately." *See* Tr. 1336:8–9; *see also Richardson v. Marsh*, 481 U.S. 200, 211 (1987) ("[J]uries are presumed to

13

follow their instructions."). Moreover, the jurors acquitted Ozuna on all counts, and Marte-Tejada and Meran on some of the charged counts, "thus reflecting careful, individualized consideration of each of the charges." *Council*, 2015 WL 13746663, at *21.

Because Marte has failed to show that he was deprived of a fair proceeding or that any prejudice resulted, the Court cannot conclude that the trial court's decision to hold a joint trial "was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). Marte is not entitled to habeas relief on the severance claim.

### IV.     The Jury Discharge Claim

Marte contends that the trial court violated New York state law in dismissing one juror (who had previously informed the Court and the parties of a pre-scheduled surgery) midway through the trial and replacing him with an alternate juror. *See* Pet. 16–17, 46–50. In particular, Marte alleges that the court failed to "make a reasonably thorough inquiry" and "afford the parties an opportunity to be heard" before dismissing the juror. C.P.L. § 270.35(2); *see* Pet. 46–47.

Marte again bases his claim solely on New York *state* law, meaning it is unreviewable for purposes of federal habeas corpus relief. *See Lewis*, 497 U.S. at 780; *Estelle*, 502 U.S. at 67–68; 28 U.S.C. § 2254(a). Thus, the Court cannot entertain this claim. *See Retallack v. Demarse*, No. 15-cv-0135, 2015 WL 10682147, at *2 (S.D.N.Y. June 8, 2015), *report and recommendation adopted*, No. 15-cv-0135, 2016 WL 1529909 (S.D.N.Y. Apr. 14, 2016) ("An allegation of improper discharge of a juror is generally an issue of state law not cognizable on habeas review."); *Kukic v. Melecio*, No. 22-cv-02684, 2023 WL 6212011, at *16 (S.D.N.Y. Sept. 25, 2023) ("[R]eview of the Appellate Division's disposition of a N.Y. CPL § 270.35 claim is not within the scope of habeas corpus review." (citation omitted)); *Friskco v. Woods*, No. 06-cv-5396, 2007 WL

2366103, at *5 (E.D.N.Y. Aug. 16, 2007) (finding "no federal constitutional basis for habeas corpus review" where petitioner challenged dismissal of juror under C.P.L. § 270.35).

Marte does not contend that dismissal of the juror impinged upon his federal or constitutional rights. Even if he did, this issue does not present a federal question because there is no constitutional requirement that the composition of jury remain unaltered throughout a criminal trial. *See United States v. Millar*, 79 F.3d 338, 342 (2d Cir. 1996) ("Substitution of an alternate juror for reasonable cause is the prerogative of the court and does not require the consent of any party." (citation and alterations omitted)); *Retallack*, 2015 WL 10682147, at *2 ("There is no federal constitutional requirement that composition of jury remain unaltered."). Moreover, because Marte did not frame this claim as an issue of federal constitutional law on his direct appeal, *see* S.R. 293–97, 447–49, 459, and he provides no explanation for his failure to do so now, *Murray*, 477 U.S. at 485, 496, this claim is procedurally barred from review.

In any event, Marte has failed to demonstrate that he was prejudiced by the dismissal of the juror. *See Kukic*, 2023 WL 6212011, at *17 (denying habeas relief where petitioners "failed to demonstrate any prejudice that they suffered as a result of the dismissal of Juror No. 2"); *Baston v. Artus*, No. 08-cv-3425, 2010 WL 5067696, at *3 (E.D.N.Y. Dec. 6, 2010) ("Even if the trial judge erred in dismissing Juror No. 6, habeas relief would not be warranted as petitioner does not allege, let alone establish, that he was prejudiced by the substitution.").

For these reasons, Marte is not entitled to habeas relief on this claim.

## CONCLUSION

The petition for a writ of habeas corpus is DENIED. The Court declines to issue a certificate of appealability because Marte has failed to make a substantial showing of a denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

The Clerk of Court is respectfully requested to close this case.

**SO ORDERED.**

Date:  November 27, 2023  
       New York, NY

_____  
**MARY KAY VYSKOCIL**  
**United States District Judge**